UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

FRANCINE ZYSK,

    Plaintiff,

v

THERESA M. BRENNAN, in her
individual and official capacities,
MIRIAM CAVANAUGH, in her
individual and official capacities,

    Defendants.

Case No.
Hon.

| James K. Fett (P39461) |
| --- |
| FETT & FIELDS, P.C. |
| 805 E. Main |
| Pinckney, MI  48169 |
| 734-954-0100 |
| 734-954-0762-fax |
| jim@fettlaw.com |
| Attorneys for Plaintiff |

# PLAINTIFF'S COMPLAINT AND JURY DEMAND

Plaintiff Francine Zysk, through counsel, Fett & Fields, P.C., states the following complaint against Defendants:

## NATURE OF ACTION

1. In this action Plaintiff alleges First Amendment retaliation under 42 U.S.C. § 1983 based on protected activity, including her subpoenaed truthful testimony in two depositions in 53rd District Judge Theresa M. Brennan's ("Brennan") divorce proceedings; the testimony related to Brennan's infidelities and

other scandalous behavior, particularly as they relate to presiding over a double murder trial where the chief prosecution witness was her paramour, Michigan State Police ("MSP") Lieutenant Sean Furlong.

2. Plaintiff seeks money damages in excess of $75,000.00 against Defendants in their individual capacities and prospective injunctive and declaratory relief.

## JURISDICTION AND PARTIES

3. Plaintiff invokes the jurisdiction of this Court under 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

4. Plaintiff is a resident of Livingston County, Michigan.

5. Brennan is a duly elected judge in the 53rd District Court in Livingston County, Michigan; Governor Granholm appointed Brennan district judge in 2005; she was elected to a two-year term in 2006 and six-year terms in 2008 and 2014.

6. Brennan is sued in her individual capacity for monetary damages and in her official capacity for prospective injunctive relief.

7. Defendant Miriam Cavanaugh is the Chief Judge of the Livingston County Courts.

8. Judge Cavanaugh is sued in her individual capacity for monetary damages and in her official capacity for prospective injunctive relief.

9. The events underlying this complaint occurred in the Eastern District of Michigan.

## COMMON ALLEGATIONS

10. Plaintiff is a 23-year employee of the 53rd District Court in Livingston County, Michigan.

11. Plaintiff began as a probation officer and, because of her exemplary performance (see **Exhibit A**), has risen through the ranks to become the 53rd District Court Administrator.

12. The Michigan Supreme Court has allowed the Livingston County Circuit Court, the Livingston County Probate Court and the 53rd District Court (collectively "the Courts") to combine operations for the purpose of achieving efficiencies and better serve the public.

13. The Chief Judge, in addition to judicial duties, oversees the Courts.

14. Judge David Reader served as Chief Judge until Judge Miriam Cavanaugh succeeded him effective January 1, 2018.

## JUDGE BRENNAN'S DIVORCE

15. Brennan's divorce from local businessman Donald Root was a cause célèbre because discovery uncovered overwhelming evidence that Brennan:

   a. engaged in extra-marital affairs with at least two individuals, including MSP Lieutenant Sean Furlong;

   b. presided over the highly publicized double murder trial of Jerome Walter Kowalski in January 2013 while having an affair

        with Furlong, who was the chief prosecution witness during that trial; Brennan and Furlong deny this;

c.   abused her office by utilizing court employees for her personal benefit on County time; and

d.   engaged in scandalous behavior such as reading a book to subordinates about fellatio, *Blow Him Away*, drinking in her chambers and rushing litigants and court personnel to conclude proceedings by 3:00 p.m. so that she could have regular sexual encounters with her paramours at the marital home.

16.   The lawsuit arises in part because Brennan continues to retaliate against the Plaintiff because she gave truthful subpoenaed deposition testimony in Brennan's divorce case.

17.   Judge Cavanaugh has been named as a defendant because she has retaliated against Plaintiff for complaining about Brennan's retaliation, challenging the Courts to address Brennan's bullying of court employees and speaking out about the Village of Fowlerville Police Chief's lack of fitness for public office.

## BRENNAN AS BULLY

18.   Brennan is a bully of epic proportions; she intimidates, terrorizes actually, court employees, litigants and attorneys.

19.   Carol Lathrop-Roberts brought a motion to disqualify Brennan from hearing a paternity action after she briefly jailed Lathrop-Roberts on June 21, 2017 for objecting to Brennan's scheduling a trial on short notice and in violation of the court rule.

20. After Brennan denied the motion, then Chief Judge David Reader heard the appeal and concluded that Brennan should not have set the paternity case for trial on such short notice and before the expiration of the 14-day period to object to Brennan's order.

21. Judge Reader, noting his review of hundreds of hours of Brennan's behavior, stated that Brennan's courtroom demeanor – including hostility to attorneys and litigants, berating others, and ignorance of the law – is an "embarrassment" to the bench.

22. Judge Reader denied Ms. Lathrop-Roberts's appeal but noted that Brennan "routinely … violates the due process rights of the litigants before her," but ruled "this demeanor is not the subject or basis for disqualification … The judge's legal rulings, no matter how bad they are, how offensive, are not matters for disqualifying the judge … The judge did not know the law that day. … This is the standard of operating procedure for Judge Brennan …"

23. Judge Reader also observed that:
   a. "In my capacity as chief judge I've had numerous motions to disqualify the judge in cases, too many, too many," "… Honestly, Miss Lathrop-Roberts, viewing your hearing … on June 21, to me, it's like Bill Murray's 'Ground Hog Day' movie – the same conduct, the same demeanor, the same rulings and the same actions over and over, just different lawyers and different litigants. …"
   b. "She constantly, constantly interjects herself into the proceedings. She cuts off litigants and attorneys as a matter of

course. She makes either erroneous rulings on the law or ignores the law completely."

c. "She routinely, routinely intimidates attorneys and litigants. She will tell you to sit down and shut up. Not just you Miss Roberts, but multiple attorneys."

d. "The fact that this conduct is repeated over and over again to multiple attorneys, to multiple litigants I find to be alarming and appalling. It is an embarrassment to the other fine judges in this County and this state."

24. Ms. Lathrop-Roberts told Judge Reader that Brennan's behavior "scares the living daylights out of my clients. They run like lemmings to the sea."

25. As noted above, Ms. Lathrop-Roberts' clients are not the only ones terrified by Brennan – most attorneys and court employees are as well.

26. Three individuals that are not terrified of Brennan are Judge David Reader, local attorney Thomas Kizer and Plaintiff Francine Zysk.

## THOSE THAT ARE NOT AFRAID OF BRENNAN

27. Judge Reader is not afraid; while Chief Judge he struggled mightily to remedy the hostile work environment created by Brennan for attorneys, litigants and court employees, including Plaintiff; in November 2017 he attempted to eliminate Brennan's docket and divide it up amongst the other Livingston County judges, who enthusiastically supported the proposal.

28. Thomas Kizer is not afraid; he has many times over the years attempted to hold Brennan accountable for many violations of her judicial oath; representing Brennan's former husband in the divorce, Kizer exposed conduct amounting to

perjury, obstruction of justice, witness intimidation and violations of the Judicial Canons of Ethics.

## PLAINTIFF'S PROTECTED ACTIVITY

29. 53rd District Court Administrator Plaintiff Francine Zysk is also not afraid; Plaintiff told the truth about Brennan's judicial and extra-curricular activities in a deposition on January 17, 2017, which Brennan attended.

30. After her first deposition, Plaintiff learned that Brennan and her paramour, MSP Lt. Sean Furlong, lied in their depositions about the duration of their affair (it did not end in 2015, but extended into 2016).

31. Outraged by the dishonesty of these two pillars of the Livingston County criminal justice system, Plaintiff contacted Kizer to inform him of the duplicity.

32. Kizer again subpoenaed Plaintiff for a deposition on March 9, 2017, which Brennan attended.

33. In addition to confirming the duration of Brennan's affair with Furlong, Plaintiff testified that she was aware of an allegation to the effect that Brennan had been observed intoxicated in her chambers.

## BRENNAN'S RETALIATORY CONDUCT

34. Brennan disrupted the examination, blurting out "You are lying. You're such a liar."

35. This was the second time Brennan attempted to stifle unfavorable deposition testimony; she interrupted paramour Furlong's deposition in an attempt to correct provable perjury:

> Q: Okay. You would of, I'm assuming, had no contact with the presiding judge, Theresa Brennan, during that trial [during which he was the chief prosecution witness], would you?
>
> A: I did not
>
> Q. Okay. Did the two of you ever exchange any texts or phone calls during that time?
>
> A. No.
>
> Q. You would be certain that you didn't do that?
>
> A. I am.
>
> Q. Okay. Thank you.
>
> > JUDGE BRENNAN: We did once.
> >
> > MR. KIZER: I don't need to hear from you.
> >
> > JUDGE BRENNAN: He's forgetting.
> >
> > MR. KIZER: I'm very concerned, she can't coach the witness. I want the record to reflect that she turned and tried to coach the witness.
> >
> > JUDGE BRENNAN: I didn't coach him. He's forgetting.
> >
> > BY MR. KIZER:
>
> Q. You're a bright guy. You recall your answer?
>
> A. I don't recall having any conversation.

Furlong Dep. at 56.

36. Unbeknownst to Brennan and paramour Furlong, Kizer was in possession of telephone records which show extensive contact between the two leading up to, during and after the trial.

37. According to Brennan, all individuals that contradict her statements about her infidelity, abuse of employees and misconduct in office are liars; Brennan has repeatedly denigrated on the record in unrelated proceedings Judge Reader, Plaintiff and others that dared provide truthful testimony or information.

38. Shortly after Plaintiff's March 9, 2017 testimony Brennan filed a false complaint against Plaintiff with the State Court Administrative Office ("SCAO") for reviewing Brennan's divorce file on County time; Plaintiff had reviewed the file to verify Brennan's perjury, but on her lunch hour.

39. Judge Reader rightfully refused to impose any discipline.

40. Since April 2017 court personnel and attorneys regularly report to Plaintiff that Brennan has been making defamatory comments about her and Judge David Reader while on the bench.

41. Brennan also refuses to have work-related communications with Plaintiff, thereby undermining her authority and ability to manage the district court.

**PLAINTIFF ENGAGED IN FURTHER PROTECTED ACTIVITY ON BEHALF OF EMPLOYEES**

42. As noted above, Brennan is a bully of epic proportions.

43. Her bullying caused at least 18 employees to resign, seek medical care or counselling or take medical leaves.

44. Many Livingston County Sheriff's deputies refused assignments to the Brighton court where she presided.

45. Plaintiff, on behalf of court employees, obtained and presented to various County officials legal authority providing that the Courts have the authority and obligation to stop Brennan's bullying.

46. In October 2017, then Chief Judge David Reader attempted to remove and reassign Brennan's docket to mitigate the disruption to Court business caused by Brennan's antics; Judges Geddis, Carol Sue Reader and Hatty readily agreed to take on portions of Brennan's docket.

47. Unfortunately, Judge David Reader was unable to effectuate the removal and reassignment of Brennan's docket.

### INTERFERENCE WITH COURT BUSINESS BY PLAINTIFF'S EX-HUSBAND GIVES LIVINGSTON COUNTY COURTS THE OPPORTUNITY TO RETALIATE AGAINST PLAINTIFF

48. Plaintiff's ex-husband, Johnnie Tyler II, is the Village of Fowlerville Police Chief.

49. Shortly after they were married Plaintiff discovered that Tyler used illegal steroids, had pled guilty to assault and battery after being charged with domestic assault, and was the subject of at least two Child Protective Services complaints.

50. Plaintiff then divorced Tyler who was not entirely receptive to the idea, requiring Plaintiff to seek assistance from the Michigan State Police and the

Brighton Police Department to reinforce to Tyler that he was to have no further contact with her.

51. In August 2016 Sheriff Deputy and Fowlerville Councilperson Everett Degrush, acting on behalf of the Village, requested an interview with Plaintiff regarding Tyler's fitness for the Fowlerville Chief position.

52. Plaintiff submitted to the interview and informed Degrush about Tyler's assault conviction and Child Protective Services complaints, as well as his steroid use.

53. Shortly thereafter, Tyler changed the venue of his stalking to Plaintiff's workplace, the Courts, where he exploited his department's business with the Court to continue his contact with Plaintiff.

54. To this end Tyler made bogus complaints to Plaintiff's supervisor, then Chief Judge David Reader; Judge Reader rebuffed Tyler's attempt to undermine Plaintiff.

55. Despite doing her best to mollify Tyler, his continued disruption of Court business proved too much to bear, both for Plaintiff and Court personnel.

56. Consequently, Plaintiff emailed Fowlerville officials, including Tyler, requesting an end Tyler's disruption of Court operations.

57. At about the same time, she posted on Facebook an article about legislation designed to screen-out bad apples (such as Tyler) from the law enforcement profession.

58. Obviously embarrassed by Tyler's antics, Fowlerville officials attempted to stifle Plaintiff's First Amendment right to speak out on matters of public concern and filed a complaint against Plaintiff with then Chief Judge Reader; Judge Reader's response was to initiate an independent investigation of Village officials', including Tyler's, disruption of Court operations.

59. Rather than holding accountable the vengeful, meddling ex-husband stalker, Judge Cavanaugh disciplined Plaintiff in January 2018 by issuing her a written reprimand which threatened termination for further attempts to resist Tyler's inappropriate behavior.

60. On January 17, 2018, Brennan, still bitter at Plaintiff for her protected activity, made a spectacle of herself at a Judge's meeting; when Plaintiff attempted to hand her a disqualification folder, Brennan stated in a disdainful voice "I will not take anything from you, I will never take anything from you, if you need something you can give it to Judge Cavanaugh and she can give it to me."

61. After Judge Cavanaugh joined the meeting, Brennan, her voice still dripping with venom, reiterated "I will never open an email from Francine, I will

never take anything from Francine, I will never have any interaction from Francine, I have told that to SCAO and Judge Cavanaugh."

62. Brennan's colleagues were stunned and appalled – except for Judge Cavanaugh who merely reminded all present that they needed to be professional.

63. Judge Cavanaugh indulges Brennan's juvenile refusal to communicate with Plaintiff regarding court business; this creates more work for everyone.

64. Unfortunately, to this day, Judge Cavanaugh and most of the Court's personnel walk on eggshells around Brennan for fear of incurring her wrath.

65. Brennan antics disrupt Court operations and in particular interfere with Plaintiff's ability to do her job.

## COUNT I
### First Amendment Retaliation in Violation of 42 U.S.C. § 1983
### (Against Brennan)

66. Plaintiff restates and incorporates by reference the allegations contained in the previous paragraphs of her Complaint.

67. Plaintiff engaged in protected activity under the First Amendment by speaking as a citizen on matters of public concern, i.e. Brennan's dishonesty, perjury, scandalous behavior, bullying of employees and disruption of court operations.

68. Brennan continues to lash out at Plaintiff because of her protected activity.

69. Brennan has lashed out at Plaintiff by:

   a. loudly and falsely proclaiming Plaintiff to be "a liar" at Plaintiff's March 9, 2017 deposition which was conducted at the courthouse;

   b. filing a false complaint with SCAO immediately after the deposition;

   c. regularly badmouthing Plaintiff from the bench;

   d. refusing to communicate with Plaintiff on court-related business, thereby disrupting court business and undermining her authority; and

   e. in January 2018 verbally abusing Plaintiff in the presence of the other judges.

70. Brennan's retaliatory conduct has the purpose and effect of broadcasting to the entire court system that she has the power to injure, intimidate and cause job insecurity.

71. Brennan's retaliatory acts would deter a person of ordinary firmness from continuing to engage in the protected conduct.

72. Brennan's retaliatory acts violate well-established First Amendment rights as evidenced by *Lane v Franks*, 134 S. Ct. 2369 (2014).

73. Brennan's actions are intentional and motivated by evil motive or intent, or, in the alternative, involve reckless and callous indifference to Plaintiff's rights.

74. Brennan's actions are causing Plaintiff present and future, economic and non-economic damages.

WHEREFORE, Plaintiff requests that the Court enter judgment against Brennan as follows:

a. Compensatory damages in whatever amount above $75,000.00 she is found to be entitled;

b. An award of lost wages and the value of fringe benefits, past and future;

c. An award of exemplary and punitive damages;

d. An award of interest, costs and reasonable attorney fees; and

e. An order awarding whatever other declaratory equitable relief appears appropriate at the time of final judgment.

## COUNT II
## Defamation
## (Against Brennan)

75. Plaintiff restates and incorporates by reference the allegations contained in the previous paragraphs of her Complaint.

76. Brennan's accusation that Plaintiff is "such a liar" is false.

77. Brennan published the remark to third parties with knowledge of the falsity of the statement or in reckless disregard of its truth or falsity.

78. The publication was not privileged.

79. The publication of these remarks has resulted in damage to Plaintiff's reputation in the community and economic loss, including, but not limited to, the following:

a. diminished earnings capacity;
b. emotional distress;
c. humiliation and embarrassment;

       d.    sleeplessness and anxiety; and

       e.    other damages that may arise during the course of this litigation.

80.    Brennan's false accusation is defamation per se.

WHEREFORE, Plaintiff requests: (1) judgment against Brennan in whatever amount determined to be fair, just and adequate compensation for her economic and non-economic injuries, (2) an award of costs, interest and attorney fees; (3) any other damages, including exemplary or punitive damages, available under Michigan law; and (4) such equitable relief as the Court deems just.

## COUNT III
### First Amendment Retaliation in Violation of 42 U.S.C. § 1983
### (Against Judge Cavanaugh)

81.    Plaintiff restates and incorporates by reference the allegations contained in the previous paragraphs of her Complaint.

82.    Plaintiff engaged in protected activity under the First Amendment by speaking as a citizen on matters of public concern, i.e. Brennan's dishonesty, perjury, scandalous behavior, bullying of employees and disruption of court operations and Tyler's lack of fitness for public office.

83.    Judge Cavanaugh has retaliated against Plaintiff because of her protected activity

84.    Judge Cavanaugh has retaliated against Plaintiff by:

       a.    acquiescing in Brennan's behavior described above; and

  b. improperly reprimanding her for attempting to end the disruption to Court operations caused by Village of Fowlerville officials, including Tyler, even though:

    i. then Chief Judge Reader determined that Fowlerville officials should have been the subject of investigation, not Plaintiff;

    ii. Plaintiff had the right to speak out on a matter of public concern regarding Tyler's fitness (or lack thereof) to hold public office; and

    iii. Judge Cavanaugh knew that Fowlerville Officials only complained about Plaintiff because she told the truth about his conviction for assault, Child Protective Services charges, and steroid use.

85. Judge Cavanaugh's retaliatory acts would deter a person of ordinary firmness from continuing to engage in the protected conduct.

86. Judge Cavanaugh's retaliatory acts violate well-established First Amendment rights.

87. Judge Cavanaugh's actions are intentional and motivated by evil motive or intent, or, in the alternative, involve reckless and callous indifference to Plaintiff's rights.

88. Judge Cavanaugh's actions are causing Plaintiff present and future economic and non-economic damages.

WHEREFORE, Plaintiff requests that the Court enter judgment against Defendants as follows:

  a. Compensatory damages in whatever amount above $75,000.00 she is found to be entitled;

- b. An award of lost wages and the value of fringe benefits, past and future;
- c. An award of exemplary and punitive damages;
- d. An award of interest, costs and reasonable attorney fees; and
- e. An order awarding whatever other declaratory or equitable relief appears appropriate at the time of final judgment.

Respectfully submitted,

*/s/ James K. Fett*
By:  James K. Fett (P39461)
Fett & Fields, P.C.
805 E. Main St.
Pinckney, MI  48169
734-954-0100
jim@fettlaw.com

Dated:  January 2, 2018                    Attorneys for Plaintiff

Affidavit of Mailing

I hereby certify that on January 2, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:  **not applicable**, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:  **not applicable.**

*/s/ James K. Fett*
James K. Fett (P39461)
Fett & Fields, P.C.
805 E. Main St.
Pinckney, MI  48169
734-954-0100
jim@fettlaw.com

# JURY DEMAND

NOW COMES Plaintiff, through her counsel Fett & Fields, P.C., and hereby demands trial by jury in the above-captioned matter.

                                        Respectfully submitted,

                                        */s/ James K. Fett*
                                        By:  James K. Fett (P39461)
                                        Fett & Fields, P.C.
                                        805 E. Main St.
                                        Pinckney, MI  48169
                                        734-954-0100
                                        jim@fettlaw.com
Dated:  February 23, 2018          Attorneys for Plaintiff

<u>Affidavit of Mailing</u>

I hereby certify that on February 23, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:  **not applicable**, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:  **not applicable.**

                                        */s/ James K. Fett*
                                        James K. Fett (P39461)
                                        Fett & Fields, P.C.
                                        805 E. Main St.
                                        Pinckney, MI  48169
                                        734-954-0100
                                        jim@fettlaw.com