UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

FRANCINE ZYSK,

      Plaintiff,

v

THERESA M. BRENNAN, in her
individual and official capacities,
MIRIAM CAVANAUGH, in her
individual and official capacities,

      Defendants.

Case No. 5:18-cv-10639
Hon. Robert H. Cleland
Mag. Judge Stephanie Dawkins Davis

| | |
|---|---|
| James K. Fett (P39461)<br>FETT & FIELDS, P.C.<br>805 E. Main<br>Pinckney, MI  48169<br>734-954-0100<br>734-954-0762-fax<br>jim@fettlaw.com<br>Attorneys for Plaintiff | T. Joseph Seward (P35095)<br>SEWARD HENDERSON, PLLC<br>210 E 3rd St Ste 212<br>Royal Oak MI 48067<br>248-733-3580<br>248-733-3633-fax<br>jseward@SewardHenderson.com<br>Attorneys for Defendant Theresa M. Brennan |
| | Thomas L. Fleury<br>KELLER THOMA, P.C.<br>26555 Evergreen Rd Ste 1240<br>Southfield MI 48076-4251<br>313-965-7610/313-965-4480-fax<br>tlf@kellerthoma.com<br>Attorneys for Defendant Miriam Cavanaugh |

# PLAINTIFF'S RESPONSE TO
# DEFENDANT BRENNAN'S MOTION TO STRIKE

# TABLE OF CONTENTS

Issue Presented ............................................................................................. ii

Most Appropriate Authority ........................................................................ iii

Index of Authorities .................................................................................... iv

I.    Introduction ......................................................................................... 1

II.   Standard for Granting Motion to Strike Under Fed. R. Civ. P. 12(f) ............... 2

III.  Requests for Striking ........................................................................... 3

IV.   Conclusion ......................................................................................... 15

## ISSUE PRESENTED

I.  Whether the Court should strike allegations in Plaintiff's complaint that are:

1.  accurate;
2.  directly related to controversy at issue or place the allegations in context; and
3.  not significantly prejudicial to Defendant?

Defendant answers:    "Yes"

Plaintiff answers:     "No"

# MOST APPROPRIATE AUTHORITY

**Sixth Circuit**

*Brown & Williamson Tobacco Corp. v. U.S.*, 201 F.2d 819, 822
    (6th Cir. 1953)..................................................................................2, 3

*Operating Engineers Local 324 Health Care Plan v. G&W Const. Co.*,
    783 F.3d 1045, 1050 (6th Cir. 2015) ....................................................2

**Federal Rules**

Fed. R. Civ. P. 12(f) .........................................................................1, 2, 3

# INDEX OF AUTHORITIES

## Sixth Circuit

### Court of Appeals

*Brown & Williamson Tobacco Corp. v. U.S.*, 201 F.2d 819, 822
(6th Cir. 1953)..................................................................................2, 3

*Morris v. Washington Metropolitan Area Transit*, 702 F.2d 1037 (1983)...............9

*Operating Engineers Local 324 Health Care Plan v. G&W Const. Co.*,
783 F.3d 1045, 1050 (6th Cir. 2015) ....................................................2

### District Courts

*Jackson v. Broughton*, 2010 WL 2993993 (E.D. Mich.)...........................................3

Traverse Bay Bands of Odawa Indians v. Snyder, 194 F. Supp. 3d 648, 658 (W.D.
2016) ...............................................................................................2

## Other Circuits

### Court of Appeals

*Coletti v. Cudd Pressure Control*, 165 F.3d 767, 776 (10th Cir. 1999) ..................10

*Woodson v. Scott Paper Co.*, 109 F.3d 913, 922-923 (3rd Cir. 1997)......................10

### District Courts

*Jones v. WMATA*, 946 F. Supp. 1011 (D DC 1996) ..................................................9

*Sherrills v. Beison*, 2005 WL 1711132, *1, (W.D. Mich. 2005)..............................2

## Federal Rules

Fed. R. Civ. P. 12(f) ........................................................................1, 2, 3

## Other

Wright & Miller, Federal Practice and Procedure: Civil 3d §§ 1380 and 1381 1 ,2 ,3

## I.    Introduction

Defendant's statement of the standard applicable to motions to strike is a far cry from the actual standard. Defendant omits what Sixth Circuit precedent, as well as the Wright & Miller treatise, make clear:

1. motions to strike are viewed with disfavor and are not frequently granted;

2. such motions should be denied unless the challenged allegations have no possible relation to the controversy *and* may cause significant prejudice to a party;

3. a motion will be denied where the judge believes no prejudice could result from the challenged allegations – even where the challenging allegations literally fall within one or more categories set forth in Rule 12(f); and

4. such motions should also be denied if the allegations serve to achieve a better understanding of the plaintiff's claim.

The challenged allegations, Defendant's purported basis for striking them, as well as Plaintiff's rebuttal are set forth below. The rebuttals will be confined to the relevance of, and in limited instances, the factual support for the allegations when challenged by Defendant.

In view of the Courts' tendencies to deny motions based on alleged technical violations of Fed. R. Civ. P. 12(f) absent prejudice to the moving party, Plaintiff will omit discussion of Defendant's objections that the allegations are superfluous, scandalous, not concise or not short plain statements.

Plaintiff will address prejudice here by noting that most if not all of the allegations in the complaint have been a matter of public record for some time. They

were also extensively reported in the media in 2017. Further, if Defendant is required to respond to the allegations, the Court will find that the allegations are in fact true.

Finally, Defendant's objection that the allegations are "repugnant" or "scandalous" is not well founded. It is Defendant's behavior that is repugnant and scandalous. Accurate description of that conduct does not violate the Federal Rules or support a motion to strike.

## II.    Standard for Granting Motion to Strike Under Fed. R. Civ. P. 12(f)

As noted in Little Traverse Bay Bands of Odawa Indians v. Snyder, 194 F. Supp. 3d 648, 658 (W.D. 2016):

> "Motions to strike are viewed **with disfavor** and are **not frequently granted**." *Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir.2015). "The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir.1953). (emphasis added)

Magistrate Judge Carmody, in *Sherrills v. Beison*, 2005 WL 1711132, *1, (W.D. Mich. 2005), draws on the Wright & Miller treatise to articulate the standard:

> Federal case law establishes that a motion to strike "should be denied unless the challenged allegations have **no possible relation** or logical connection to the subject matter of the controversy **and** may cause some form of **significant prejudice** to one or more of the parties to the action." *Id.* (emphasis added)

> "The Rule 12(f) motion to strike allegedly offensive matter also will be denied **if the allegations might serve to achieve a better understanding of the plaintiff's claim** for relief or perform some other useful purpose in promoting the just and efficient disposition of

litigation." *Id.* Furthermore, for the moving party to succeed on a motion to strike it must "comply with the requirement in Rule 7(b) that motions state with particularity the grounds therefor and set forth the nature of relief or type of order sought." Wright & Miller, Federal Practice and Procedure: Civil 3d § 1380. "Thus, it is not surprising that **a motion to strike frequently has been denied when the court believes that no prejudice could result from the challenged allegations, even though the offending matter literally is within one or more of the categories set forth in Rule 12(f)**." Wright & Miller, Federal Practice and Procedure: Civil 3d § 1381. (emphasis added)

Finally, this Court stated the standard in *Jackson v. Broughton*, 2010 WL

2993993 (E.D. Mich.):

> It is "well established that the action of striking a pleading should be sparingly used by the courts. It is a drastic remedy to be resorted to only when required for the purposes of justice." *Woods v. Northport Pub. Sch.,* No. 09–243, 2010 WL 2232263, at *1 (W.D. Mich. June 3, 2010) (quoting *Brown & Williamson Tobacco Corp. v. United States,* 201 F.2d 819, 822 (6th Cir.1953)). "The motion to strike should be granted only when the pleading to be stricken has *no possible relation* to the controversy." *Rock Holdings, Inc., et al. v. Certain Underwriters at Lloyd's London,* No. 09–11599, 2009 WL 2475400, at *3 (E.D.Mich. Aug.11, 2009) (quoting *Brown & Williamson,* 201 F.2d at 822)) (emphasis added). A district court should not strike a matter "unless the court can confidently conclude that the portion of the pleading to which the motion is addressed is redundant or is both irrelevant to the subject matter of the litigation *and prejudicial* to the objecting party." *Aqua Bay Concepts, Inc. v. Gross Pointe Bd. Of Realtors,* No. 91–74819, 1992 WL 350275, at *2 (E.D.Mich. May 7, 1992) (emphasis added) (quoting *Fed. Nat'l Mortgage Ass'n v. Cob et al.,* 738 F.Supp. 1220, 1224 (N.D.Ind.1990)). (emphasis in original)

Defendant Brennan cannot meet the standard as properly stated above.

## III.  Requests for Striking

1.  In this action Plaintiff alleges First Amendment retaliation under 42 U.S.C. § 1983 based on protected activity, including her

subpoenaed truthful testimony in two depositions in 53rd District Judge Theresa M. Brennan's ("Brennan") divorce proceedings; **the testimony related to Brennan's infidelities and other scandalous behavior, particularly as they relate to presiding over a double murder trial where the chief prosecution witness was her paramour, Michigan State Police ("MSP") Lieutenant Sean Furlong**. *(Where Defendant requests striking only a portion of a paragraph, Plaintiff will bold the language Defendant is requesting to be stricken.)*

**Basis for Request No. 1**: Scandalous.

**Rebuttal**: The allegations accurately state Plaintiff's claim.

11. Plaintiff began as a probation officer and, because of her exemplary performance (see Exhibit A), has risen through the ranks to become the 53rd District Court Administrator.

12. The Michigan Supreme Court has allowed the Livingston County Circuit Court, the Livingston County Probate Court and the 53rd District Court (collectively "the Courts") to combine operations for the purpose of achieving efficiencies and better serve the public.

13. The Chief Judge, in addition to judicial duties, oversees the Courts.

14. Judge David Reader served as Chief Judge until Judge Miriam Cavanaugh succeeded him effective January 1, 2018.

15. Brennan's divorce from local businessman Donald Root was a cause célèbre because discovery uncovered overwhelming evidence that Brennan:

　　a.　　engaged in extra-marital affairs with at least two individuals, including MSP Lieutenant Sean Furlong;

　　b.　　presided over the highly publicized double murder trial of Jerome Walter Kowalski in January 2013 while having an affair with Furlong, who was the chief prosecution witness during that trial; Brennan and Furlong deny this;

　　c.　　abused her office by utilizing court employees for her personal benefit on County time; and

    d.    engaged in scandalous behavior such as reading a book to subordinates about fellatio, *Blow Him Away*, drinking in her chambers and rushing litigants and court personnel to conclude proceedings by 3:00 p.m. so that she could have regular sexual encounters with her paramours at the marital home.

**Basis for Request No. 2**: Superfluous; unrelated; not a short plain statement.

**Rebuttal**: Paragraphs 11-14 are appropriate background facts which make the claim easier to understand. Paragraph 15 is literally true and proves that Plaintiff's speech relates to matter of public concern. Further, proof of the allegation will make it more likely that Defendant retaliated against Plaintiff for confirming these facts.

17. Judge Cavanaugh has been named as a defendant because she has retaliated against Plaintiff for complaining about Brennan's retaliation, **challenging the Courts to address Brennan's bullying of court employees and speaking out about the Village of Fowlerville Police Chief's lack of fitness for public office**. (*non-bolded language included for context*)

### BRENNAN AS BULLY

18. Brennan is a bully of epic proportions; she intimidates, terrorizes actually, court employees, litigants and attorneys.

19. Carol Lathrop-Roberts brought a motion to disqualify Brennan from hearing a paternity action after she briefly jailed Lathrop-Roberts on June 21, 2017 for objecting to Brennan's scheduling a trial on short notice and in violation of the court rule.

20. After Brennan denied the motion, then Chief Judge David Reader heard the appeal and concluded that Brennan should not have set the paternity case for trial on such short notice and before the expiration of the 14-day period to object to Brennan's order.

21. Judge Reader, noting his review of hundreds of hours of Brennan's behavior, stated that Brennan's courtroom demeanor – including hostility to attorneys and litigants, berating others, and ignorance of the law – is an "embarrassment" to the bench.

22. Judge Reader denied Ms. Lathrop-Roberts's appeal but noted that Brennan "routinely … violates the due process rights of the litigants before her," but ruled "this demeanor is not the subject or

basis for disqualification … The judge's legal rulings, no matter how bad they are, how offensive, are not matters for disqualifying the judge … The judge did not know the law that day. … This is the standard of operating procedure for Judge Brennan …"

23. Judge Reader also observed that:

   a. "In my capacity as chief judge I've had numerous motions to disqualify the judge in cases, too many, too many," "… Honestly, Miss Lathrop-Roberts, viewing your hearing … on June 21, to me, it's like Bill Murray's 'Ground Hog Day' movie – the same conduct, the same demeanor, the same rulings and the same actions over and over, just different lawyers and different litigants. …"

   b. "She constantly, constantly interjects herself into the proceedings. She cuts off litigants and attorneys as a matter of course. She makes either erroneous rulings on the law or ignores the law completely."

   c. "She routinely, routinely intimidates attorneys and litigants. She will tell you to sit down and shut up. Not just you Miss Roberts, but multiple attorneys."

   d. "The fact that this conduct is repeated over and over again to multiple attorneys, to multiple litigants I find to be alarming and appalling. It is an embarrassment to the other fine judges in this County and this state."

24. Ms. Lathrop-Roberts told Judge Reader that Brennan's behavior "scares the living daylights out of my clients. They run like lemmings to the sea."

25. As noted above, Ms. Lathrop-Roberts' clients are not the only ones terrified by Brennan – most attorneys and court employees are as well.

26. Three individuals that are not terrified of Brennan are Judge David Reader, local attorney Thomas Kizer and Plaintiff Francine Zysk.

**Basis for Request No. 3**: Repugnant; unrelated to action; not concise.

**Rebuttal**: These allegations are relevant because Plaintiff testified about Defendant's "judicial and extra-curricular activities" and they accurately portray Defendant's temperament and demeanor. See paragraphs 25, 29, 33. Further they support Plaintiff's claim that Defendant created a "hostile environment for attorneys,

litigants and court employees." See paragraph 27. Plaintiff addressed Chief Judge Reader on many occasions regarding Defendant's treatment of the attorneys and litigants, which is protected activity. Finally, litigants routinely state why individual defendants, in this case, Judge Cavanaugh, are sued and in what capacity.

## THOSE THAT ARE NOT AFRAID OF BRENNAN

27. Judge Reader is not afraid; while Chief Judge he struggled mightily to remedy the hostile work environment created by Brennan for attorneys, litigants and court employees, including Plaintiff; in November 2017 he attempted to eliminate Brennan's docket and divide it up amongst the other Livingston County judges, who enthusiastically supported the proposal.

28. Thomas Kizer is not afraid; he has many times over the years attempted to hold Brennan accountable for many violations of her judicial oath; representing Brennan's former husband in the divorce, Kizer exposed conduct amounting to perjury, obstruction of justice, witness intimidation and violations of the Judicial Canons of Ethics.

## PLAINTIFF'S PROTECTED ACTIVITY

29. **53rd District Court Administrator Plaintiff Francine Zysk is also not afraid**; Plaintiff told the truth about Brennan's judicial and extra-curricular activities in a deposition on January 17, 2017, which Brennan attended. (non-bolded language included for context)

**Basis for Request No. 4**: Unrelated to case; repugnant language; not plain.

**Rebuttal:** These allegations are appropriate background information which makes the rest of the complaint easier to understand**.**

30  After her first deposition, Plaintiff learned that Brennan and her paramour, MSP Lt. Sean Furlong, lied in their depositions about the duration of their affair (it did not end in 2015, but extended into 2016).

31  Outraged by the dishonesty of these two pillars of the Livingston County criminal justice system, Plaintiff contacted Kizer to inform him of the duplicity.

32. Kizer again subpoenaed Plaintiff for a deposition on March 9, 2017, which Brennan attended. *(No request that this paragraph be stricken but included for context.)*

33. In addition to confirming the duration of Brennan's affair with Furlong, Plaintiff testified that she was aware of an allegation to the effect that Brennan had been observed intoxicated in her chambers.

**Basis for Request No. 5**: Repugnant, superfluous and unrelated to case; no factual basis; argumentative.

**Rebuttal**: Plaintiff testified to these facts in her depositions, which is the protected activity in this case. Moreover, Defendant admitted in her deposition that Furlong was her paramour and only contests the dates of the affair/relationship.

## BRENNAN'S RETALIATORY CONDUCT

34  Brennan disrupted the examination, blurting out "You are lying. You're such a liar." *(No request that this paragraph be stricken but included for context.)*

35  This was the second time Brennan attempted to stifle unfavorable deposition testimony; she interrupted paramour Furlong's deposition in an attempt to correct provable perjury:

Q:  Okay. You would of, I'm assuming, had no contact with the presiding judge, Theresa Brennan, during that trial [during which he was the chief prosecution witness], would you?

A:  I did not

Q.  Okay. Did the two of you ever exchange any texts or phone calls during that time?

A.  No.

Q.  You would be certain that you didn't do that?

A.  I am.

Q.  Okay. Thank you.

JUDGE BRENNAN: We did once.

MR. KIZER: I don't need to hear from you.

JUDGE BRENNAN: He's forgetting.

> MR. KIZER: I'm very concerned, she can't coach the witness. I want the record to reflect that she turned and tried to coach the witness.
>
> JUDGE BRENNAN: I didn't coach him. He's forgetting.
>
> BY MR. KIZER:
>
> Q.   You're a bright guy. You recall your answer?
>
> A.   I don't recall having any conversation.

Furlong Dep. at 56.

36.   Unbeknownst to Brennan and paramour Furlong, Kizer was in possession of telephone records which show extensive contact between the two leading up to, during and after the trial.

**Basis for Request No. 6**: Unrelated, repugnant, superfluous and scandalous.

**Rebuttal**: These allegations show that Defendant twice used her position as a local judge to intimidate participants at depositions in her divorce case (i.e. she acted under color of law); they also demonstrate why Defendant was so angry at Plaintiff for her testimony (she contradicted her and Furlong), making it more likely that she would retaliate when Plaintiff testified contrary to her and Furlong.

37.   According to Brennan, all individuals that contradict her statements about her infidelity, abuse of employees and misconduct in office are liars; Brennan has repeatedly denigrated on the record in unrelated proceedings Judge Reader, Plaintiff and others that dared provide truthful testimony or information.

38.   Shortly after Plaintiff's March 9, 2017 testimony Brennan filed a false complaint against Plaintiff with the State Court Administrative Office ("SCAO") for reviewing Brennan's divorce file on County time; **Plaintiff had reviewed the file to verify Brennan's perjury**, but on her lunch hour. (*non-bolded language included for context*)

39.   Judge Reader rightfully refused to impose any discipline.

**Basis for Request No. 7**: Superfluous, unrelated and repugnant.

**Rebuttal**: Proof of a defendant's retaliatory tendencies is relevant and admissible. *Morris v. Washington Metropolitan Area Transit*, 702 F.2d 1037 (1983); *Jones v. WMATA*, 946 F. Supp. 1011 (D DC 1996) ("Evidence showing that the employer

followed a broad practice of retaliation and responded to any protected criticism with disciplinary action has some probative value on the issue of the employer's like motivation here.") *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 776 (10th Cir. 1999) (Defendant employer's treatment of other employees is relevant to the issue of employer's discriminatory intent "if the testimony establishes a pattern of retaliatory behavior or tends to discredit the employer's assertion of legitimate motives.") Proof that Defendant retaliated against Plaintiff for verifying information which caused her to engage in protected activity is relevant. Finally, that Judge Reader did not discipline Plaintiff on account of Defendant's complaint to SCAO is relevant to the validity of Defendant's complaint.

## PLAINTIFF ENGAGED IN FURTHER PROTECTED ACTIVITY ON BEHALF OF EMPLOYEES

42. As noted above, Brennan is a bully of epic proportions.

43. Her bullying caused at least 18 employees to resign, seek medical care or counselling or take medical leaves.

44. Many Livingston County Sheriff's deputies refused assignments to the Brighton court where she presided.

45. Plaintiff, on behalf of court employees, obtained and presented to various County officials legal authority providing that the Courts have the authority and obligation to stop Brennan's bullying.

46. In October 2017, then Chief Judge David Reader attempted to remove and reassign Brennan's docket to mitigate the disruption to Court business caused by Brennan's antics; Judges Geddis, Carol Sue Reader and Hatty readily agreed to take on portions of Brennan's docket.

47. Unfortunately, Judge David Reader was unable to effectuate the removal and reassignment of Brennan's docket.

**Basis for Request No. 8**: Mere conclusions and involve third parties; 43 & 45 unsupported by fact; repugnant.

**Rebuttal**: The existence of a hostile work environment makes it more likely that Defendant retaliated. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 922-923 (3rd Cir. 1997). Moreover, Plaintiff is entitled to plead the basis for her protected activity – complaints to management about the hostile environment for employees, attorneys and litigants; Defendant will learn in discovery that in fact Plaintiff did obtain and

present legal authority to County officials. The fact that Defendant's colleagues recognized the need to address the hostile environment confirms its existence.

### INTERFERENCE WITH COURT BUSINESS BY PLAINTIFF'S EX-HUSBAND GIVES LIVINGSTON COUNTY COURTS THE OPPORTUNITY TO RETALIATE AGAINST PLAINTIFF

48. Plaintiff's ex-husband, Johnnie Tyler II, is the Village of Fowlerville Police Chief.

49. Shortly after they were married Plaintiff discovered that Tyler used illegal steroids, had pled guilty to assault and battery after being charged with domestic assault, and was the subject of at least two Child Protective Services complaints.

50. Plaintiff then divorced Tyler who was not entirely receptive to the idea, requiring Plaintiff to seek assistance from the Michigan State Police and the Brighton Police Department to reinforce to Tyler that he was to have no further contact with her.

51. In August 2016 Sheriff Deputy and Fowlerville Councilperson Everett Degrush, acting on behalf of the Village, requested an interview with Plaintiff regarding Tyler's fitness for the Fowlerville Chief position.

52. Plaintiff submitted to the interview and informed Degrush about Tyler's assault conviction and Child Protective Services complaints, as well as his steroid use.

53. Shortly thereafter, Tyler changed the venue of his stalking to Plaintiff's workplace, the Courts, where he exploited his department's business with the Court to continue his contact with Plaintiff.

54. To this end Tyler made bogus complaints to Plaintiff's supervisor, then Chief Judge David Reader; Judge Reader rebuffed Tyler's attempt to undermine Plaintiff.

55. Despite doing her best to mollify Tyler, his continued disruption of Court business proved too much to bear, both for Plaintiff and Court personnel.

56. Consequently, Plaintiff emailed Fowlerville officials, including Tyler, requesting an end Tyler's disruption of Court operations.

57. At about the same time, she posted on Facebook an article about legislation designed to screen-out bad apples (such as Tyler) from the law enforcement profession.

58. Obviously embarrassed by Tyler's antics, Fowlerville officials attempted to stifle Plaintiff's First Amendment right to speak out on matters of public concern and filed a complaint against Plaintiff with then Chief Judge Reader; Judge Reader's response was to initiate an independent investigation of Village officials', including Tyler's, disruption of Court operations.

59. Rather than holding accountable the vengeful, meddling ex-husband stalker, Judge Cavanaugh disciplined Plaintiff in January 2018 by issuing her a written reprimand which threatened termination for further attempts to resist Tyler's inappropriate behavior.

**Basis for Request No. 9**: Superfluous; do not say why Plaintiff entitled to relief; not concise.

**Rebuttal**: Plaintiff has the right and obligation to set forth her claim of First Amendment retaliation against Judge Cavanaugh. These allegations do that.

60. On January 17, 2018, Brennan, still bitter at Plaintiff for her protected activity, made a spectacle of herself at a Judge's meeting; when Plaintiff attempted to hand her a disqualification folder, Brennan stated in a disdainful voice "I will not take anything from you, I will never take anything from you, if you need something you can give it to Judge Cavanaugh and she can give it to me."

61. After Judge Cavanaugh joined the meeting, Brennan, her voice still dripping with venom, reiterated "I will never open an email from Francine, I will never take anything from Francine, I will never have any interaction from Francine, I have told that to SCAO and Judge Cavanaugh."

62. Brennan's colleagues were stunned and appalled – except for Judge Cavanaugh who merely reminded all present that they needed to be professional.

63. Judge Cavanaugh indulges Brennan's juvenile refusal to communicate with Plaintiff regarding court business; this creates more work for everyone.

64. Unfortunately, to this day, Judge Cavanaugh and most of the Court's personnel walk on eggshells around Brennan for fear of incurring her wrath.

65. Brennan antics disrupt Court operations and in particular interfere with Plaintiff's ability to do her job.

**Basis for Relief No. 10**: Repugnant, superfluous, unrelated; 63-65 are conclusions unsupported by fact; not concise.

**Rebuttal**: These allegations relate to (1) one of Defendant's adverse actions against Plaintiff; (2) Judge Cavanaugh's indulgence of same, much to the chagrin of her colleagues who will testify in support of Plaintiff and (3) the harm to Plaintiff and her subordinates caused by Defendant's actions.

## COUNT I
### First Amendment Retaliation in Violation of 42 U.S.C. § 1983
### (Against Brennan)

67. Plaintiff engaged in protected activity under the First Amendment by speaking as a citizen on matters of public concern, **i.e. Brennan's dishonesty, perjury, scandalous behavior, bullying of employees and disruption of court operations**. (*non-bolded language included for context*)

70. Brennan's retaliatory conduct has the purpose and effect of broadcasting to the entire court system that she has the power to injure, intimidate and cause job insecurity.

## COUNT III
### First Amendment Retaliation in Violation of 42 U.S.C. § 1983
### (Against Judge Cavanaugh)

82. Plaintiff engaged in protected activity under the First Amendment by speaking as a citizen on matters of public concern, **i.e. Brennan's dishonesty, perjury, scandalous behavior, bullying of employees and disruption of court operations and Tyler's lack of fitness for public office**. (*non-bolded language included for context*)

\*          \*          \*

84. Judge Cavanaugh has retaliated against Plaintiff by:

   a. acquiescing in Brennan's behavior described above; and

   b. **improperly reprimanding her for attempting to end the disruption to Court operations caused by Village of Fowlerville officials, including Tyler, even though:**

      i. **then Chief Judge Reader determined that Fowlerville officials should have been the subject of investigation, not Plaintiff;**

      ii. **Plaintiff had the right to speak out on a matter of public concern regarding Tyler's fitness (or lack thereof) to hold public office; and**

      iii. **Judge Cavanaugh knew that Fowlerville Officials only complained about Plaintiff because she told the truth about his conviction for assault, Child Protective Services charges, and steroid use.** (*non-bolded language included for context*)

**Basis for Request No. 11**: "Do not state concisely how Plaintiff is entitled to her claims;" repugnant, superfluous.

**Rebuttal**: These allegations relate to (1) whether Plaintiff's testimony was a matter of public concern, (2) Defendant's liability for punitive damages and (3) the specious basis for the reprimand which is one of the adverse actions alleged in the complaint.

**Basis for Request No. 12**: Exhibit A reference letters extolling Plaintiff's performance superfluous and unrelated to claims or damages.

**Rebuttal**: That Defendant would treat so poorly such a valuable employee makes it more likely that the adverse actions were based on an illegal factor – Plaintiff's protected activity. The letters will also undermine Defendant's anticipated claim that Plaintiff is complaining because she is a disgruntled employee.

## IV.  Conclusion

Defendant's brief is heavily laden with references to her status "as a judge," a "sitting Michigan District Judge," "her reputation as a judge," and her "judicial position." Plaintiff submits such references are a thinly veiled attempt to gain an advantage because of that status. Defendant is entitled to no special treatment on account of her status as a judge. Her motion should be denied in its entirety.

Respectfully submitted,

/s/ James K. Fett
By:  James K. Fett (P39461)
Fett & Fields, P.C.
805 E. Main St.
Pinckney, MI  48169
734-954-0100
jim@fettlaw.com

Dated: April 12, 2018    Attorneys for Plaintiff

Affidavit of Mailing

I hereby certify that on April 12, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: **T. Joseph Seward and Thomas L. Fleury**.

/s/ James K. Fett
James K. Fett (P39461)
Fett & Fields, P.C.
805 E. Main St.
Pinckney, MI  48169
734-954-0100
jim@fettlaw.com