UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

FRANCINE ZYSK,

     Plaintiff,

v

THERESA M. BRENNAN, in her
individual and official capacities,
MIRIAM CAVANAUGH, in her
individual and official capacities,

     Defendants.

Case No. 5:18-cv-10639
Hon. Robert H. Cleland
Mag. Judge Stephanie Dawkins Davis

| | |
|---|---|
| James K. Fett (P39461)<br>FETT & FIELDS, P.C.<br>805 E. Main<br>Pinckney, MI  48169<br>734-954-0100<br>734-954-0762-fax<br>jim@fettlaw.com<br>Attorneys for Plaintiff | T. Joseph Seward (P35095)<br>SEWARD HENDERSON, PLLC<br>210 E 3rd St Ste 212<br>Royal Oak MI 48067<br>248-733-3580<br>248-733-3633-fax<br>jseward@SewardHenderson.com<br>Attorneys for Defendant Theresa M. Brennan |
| | Thomas L. Fleury<br>KELLER THOMA, P.C.<br>26555 Evergreen Rd Ste 1240<br>Southfield MI 48076-4251<br>313-965-7610/313-965-4480-fax<br>tlf@kellerthoma.com<br>Attorneys for Defendant Miriam Cavanaugh |

**PLAINTIFF'S RESPONSE TO
DEFENDANT BRENNAN'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Index of Authorities ........................................................................................... ii

Issues Presented ...............................................................................................iv

I.    Facts ............................................................................................................1

II.   Standard for FRCP 12(b)(6) Motion .......................................................3

III.  Judicial Immunity ....................................................................................4

      A.   Law ...................................................................................................4

      B.   Application .......................................................................................6

          1.   Defamation .................................................................................6

          2.   SCAO Complaint .......................................................................6

          3.   Badmouthing Plaintiff to Third Parties..................................7

          4.   Interference with Plaintiff's Ability to do Her Job................7

          5.   Humiliation of Plaintiff at the Judges Meeting.....................8

IV.   Color of State Law ...................................................................................9

V.    Adverse Action.........................................................................................11

      A.   Standard for Adverse Action .........................................................11

      B.   Application ......................................................................................15

VI.   Defamation ...............................................................................................16

      A.   Judicial-Proceedings Privilege ......................................................16

      B.   Publication of Defamation to Third Parties.................................18

      C.   Governmental Immunity ...............................................................18

VII.  Conclusion................................................................................................19

# Index of Authorities

## CASES

*Armstrong v. Shirvell*, 596 Fed.Appx. 433 (6th Cir. 2015) .......................... 16

*Barrett v. Harrington*, 130 F.3d 246, 260-261 (6th Cir. 1997) .................. 5, 6

*Bart v. Talford*, 677 F.2d 622, 625 (7th Cir. 1982) ...................................... 14

*Bedford v Witte*, 318 Mich. App. 60, 65 (2016).................................... 17, 18

*Brookings v. Clunk*, 389 F.3d 614, 617-618 (6th Cir. 2004)........................... 5

*Cameron v. Seitz*, 68 F.3d 264, 271 (6th Cir. 1994) ................................. 5, 6

*Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) ........................................................................................ 3

*Coszalter v. City of Salem*, 320 F.3d 968, 976-977 (9th Cir. 2003) ...... 12, 13

*Ely v. Dearborn Heights School Dt.*, 150 F.3d 842, 853 (E.D. Mich. 2015) ...................................................................................... 14

*Forrester v. White*, 484 U.S. 219, 228, 108 S.Ct. 538, L.Ed.2d 555 (1988) ................................................................................... 8

*Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718, 723 (6th Cir 2010).. 11, 14

*Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) ................... 3

*Ghannam v. Hamameh*, 2014 WL 2158174 ............................................. 17

*Gregory v. Thomas*, 500 F.2d 59 (1974) ...................................................... 5

*Harris v. Harvey*, 605 F.3d 330, 336 (7th Cir. 1979)................................... 7

*In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) ................. 3

*Kline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) ...................................... 3

*Lee v. City of Corpus Christi*, 749 F.Supp.2d 521, 540-541 (S.D. Tex. 2010) ...................................................................................... 15

*Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) ................................................................................... 3, 4

*LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1100-01 (6th Cir. 1995)................................................................................. 3

*Malina v. Gonzalez*, 1993 WL 534163 (E.D. La.) ...................................... 11

*Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) ................................... 3

*Mihalik v. Credit Agricole Cheuvreux North American, Inc.*, 715 F.3d 102, 116 (2d Cir. 2013) ...................................................................... 14

*Oesterle v. Wallace*, 272 Mich. App. 260, 264 (2006) ......................... 16, 17

*Rutan v. Republican Party of Illinois*, 497 U.S. 62, 75, n. 8; 110 S.Ct. 2729 (1990) ................................................................................ 12, 13

*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) ............................................................................................. 4

*Simas v. First Citizens Fed. Credit Union*, 170 F.3d 37, 52, n. 12 (1st Cir. 1999) ............................................................................................ 14

*Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996) ................ 3

*Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999) .......................... 14

*Timmis v. Bennett*, 352 Mich. 355, 364 (1958) ........................................... 17

*Waters v. City of Morristown, TN*, 242 F.3d 353, 359 (2001) ....................... 9

*Wright v. MetroHealth Medical Center*, 58 F.3d 1130, 1138 (6th Cir. 1995) .............................................................................................. 3

*Wurzelbacher v. Jones-Kelly*, 675 F.3d 580, 584 (6th Cir. 2012) .............. 15

*Zarcone v. Perry*, 572 F.2d 52 (2d Cir. 2978) ............................................. 5

## OTHER

FRCP 12(b)(6) ............................................................................................. 3

MCLA 691.1407(5) ................................................................................... 18

Schwartz, *Section 1983 Litigation*, Vol 1A, §9.03 .................................. 4, 8

# ISSUES PRESENTED

I.    Whether Defendant is entitled to judicial immunity for adverse actions
      having nothing to do with an adjudication, that were not functions normally
      performed by a judge, that did not occur while Plaintiff was dealing with
      Defendant in her judicial capacity, and for the most part did not occur in the
      courtroom or chambers.

    Plaintiff states:  "No"

    Defendants state:  "Yes"


II.   Whether Defendant was acting under the "color of law" when she made a
      defamatory statement at Plaintiff's deposition while attempting to use her
      judicial position to influence the outcome of her divorce case.

    Plaintiff states:  "Yes"

    Defendants state:  "No"


III.  Whether Plaintiff suffered an adverse action for purposes of her First
      Amendment retaliation claim.

    Plaintiff states:  "Yes"

    Defendants state:  "No"


IV.   Whether Defendant is entitled to judicial proceedings privilege when she
      was not acting as judge, attorney or witness while defaming Plaintiff.

    Plaintiff states:  "No"

    Defendants state:  "Yes"


V.    Whether Plaintiff's complaint states a claim for defamation where it
      references that the statements were made in a deposition in which two
      attorneys and a court reporter were present.

    Plaintiff states:  "Yes"

    Defendants state:  "No"

VI.   Whether Defendant is entitled to governmental immunity for Plaintiff's defamation claim where it is undisputed that she was attending a deposition in her divorce case as a litigant, not as a judge.

Plaintiff states:        "No"

Defendants state:     "Yes"

## I.   Facts

Plaintiff Francine Zysk is the 53rd District Court Administrator. The Court has three judges – Judge Carol Sue Reader, Judge Suzanne Geddis and Defendant.

The 53rd District Court and the Livingston County Circuit Court operate as a unified court. Circuit Judge David J. Reader was the Chief Judge over both courts until January 1, 2018 when Judge Miriam Cavanaugh succeeded him. Until recently Plaintiff reported to the Chief Judge.

Defendant's husband Donald Root filed for divorce on December 2, 2016. Mr. Root filed for divorce because Defendant had affairs with Detective Lieutenant Sean Furlong of the Michigan State Police and at least one other man. The divorce case became a matter of great public interest because Lt. Furlong was the chief prosecution witness in a double murder trial in which the defendant, 63-year-old Jerome Kowalski, was convicted of killing his brother and his wife.

Defendant and Furlong admit the affair but deny an intimate relationship in the run up to and during the trial. Mr. Root's attorney, Thomas Kizer, obtained telephone records that suggest otherwise.

Plaintiff and several other court employees that socialized with Defendant were subpoenaed for depositions. Plaintiff testified twice, once in January 2017 and again on March 9, 2017.

The topics Plaintiff was questioned about included the duration of the affair. Plaintiff contradicted Defendant's testimony that the affair ended in 2015. She testified that Defendant had told her and others in a group text that she had sex with Furlong twice in the Spring of 2016 in Key West. (**Exhibit A**: Tr. At 4-9). She also testified that Defendant regularly ended court at 3:00 p.m. so that she could have sex with another man at the marital home while her husband was away. (*Id.* at 15-16)

Plaintiff also testified that Defendant acknowledged drinking in her chambers and that she had heard rumors that Defendant had been observed intoxicated there. This is when Defendant attempted to halt the deposition and, when she was unsuccessful, called Plaintiff a liar. (*Id.* at 27-28)

The liar statement was made in the presence of two attorneys, Mr. Root and a court reporter and overheard by Deputy Sheriff Ed Bishop who was in the hallway outside the courthouse conference room. Shortly thereafter Circuit Judge Michael Hatty encountered Plaintiff in the hall and indicated that he had heard about the statement and told her he was sorry to hear about the incident (**Exhibit B**: Declaration of Francine Zysk, para. 5).

Plaintiff has also engaged in protected activity by submitting to multiple interviews with the Michigan State Police and the Judicial Tenure Commission, who are still conducting their investigations of Defendant.

## II.    Standard for FRCP 12(b)(6) Motion

In deciding motions under Rule 12(b)(6) the court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996) *Kline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996); *Wright v. MetroHealth Medical Center*, 58 F.3d 1130, 1138 (6th Cir. 1995). When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). Hence, a judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations. *Wright*, 58 F.3d at 1138; *Columbia Natural Resources, Inc.*, 58 F.3d at 1109.

Though decidedly liberal, this standard of review does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1100-01 (6th Cir. 1995). The complaint should give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). "In practice, 'a … complaint must contain either direct or inferential allegations respecting all the material elements to

sustain a recovery under *some* viable legal theory.'" *Lillard*, 76 F.3d at 726 (emphasis in original) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

## III.   Judicial Immunity

### A.   Law

Plaintiff alleges that Defendant took five adverse actions against her:

1. she called her a liar in the presence of two attorneys and a court reporter; that statement was overheard by a deputy sheriff who was posted at the courthouse conference room where the deposition was held; Circuit Judge Michael Hatty told Plaintiff shortly afterwards in the hallway that he had heard about the statement and was sorry; a transcript of the deposition, including the liar statement, was later filed in the publicly available court file (**Exhibit B**: Zysk Declaration);

2. she made a complaint against Plaintiff with the State Court Administrative Office ("SCAO");

3. she regularly badmouthed Plaintiff both on and off the bench;

4. as she informed the SCAO, and Chief Judge Cavanaugh, Defendant refuses to communicate with Plaintiff even though Defendant's docket is one-third of the District Court's business; this significantly frustrated Plaintiff's ability to perform her duties; and

5. she humiliated Plaintiff in the presence of her judicial colleagues at a Judge's Meeting.

These are not judicial acts for which Defendant has absolute immunity.

Schwartz, *Section 1983 Litigation*, Vol 1A, §9.03[B][2] (**Exhibit C**) states:

Whether an act is a judicial act depends on "whether it is a function normally performed by a judge" and "whether [the parties] dealt with the judge in his judicial capacity." Circuit court decisions list two other relevant factors: whether the acts occurred in chambers or open court,

as opposed to some other place,[1] and whether they were related to a pending case. (footnotes omitted)

The Sixth Circuit in *Brookings v. Clunk*, 389 F.3d 614, 617-618 (6th Cir. 2004)

described the process for ascertaining whether an act is "judicial" and therefore

subject to absolute immunity:

In *Stump,* the Supreme Court established a two-prong test to determine whether an act is "judicial." [*Stump v. Sparkman,* 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) ]. First, the court must consider whether the act in question is a function that is "**normally performed by a judge.**" *Id.* This court has previously referred to this inquiry as the functional approach. Under this inquiry, a court is required to examine the nature and function of the act, not the act itself. The Supreme Court reformulated this inquiry in *Mireles* by establishing that, even if a particular act is not a function normally performed by a judge, the court must look to the particular act's relation to a general function normally performed by a judge. *Id.* at 13, 112 S.Ct. 286. (emphasis added)

Second, in determining whether an act is "judicial," the court must assess **whether the parties dealt with the judge in his or her judicial capacity**. *Id.* at 12, 112 S.Ct. 286. In examining the functions normally performed by a judge, this court has recognized that "paradigmatic judicial acts," or acts that involve **resolving disputes between parties** who have invoked the jurisdiction of a court, are the touchstone for application of judicial immunity. *Barrett v. Harrington,* 130 F.3d 246, 255 (6th Cir.1997) (citing *Antoine* [*v. Byers & Anderson* ], 508 U.S. [429,] 435–36, 113 S.Ct. 2167 [124 L.Ed.2d 391 (1993) ] ). **Conversely, whenever an action taken by a judge is not an adjudication between the parties, it is less likely that it will be deemed judicial.** *Cameron v. Seitz,* **38 F.3d 264, 271 (6th Cir.1994)**. (emphasis added)

---

[1] This factor is not dispositive as judges have been denied immunity for courtroom conduct. *See, e.g., Gregory v. Thomas*, 500 F.2d 59 (1974) and *Zarcone v. Perry*, 572 F.2d 52 (2d Cir. 1978).

## B.    Application

Defendant is not entitled to absolute judicial immunity because:

1. the adverse actions in question have nothing to do with an adjudication. *Cameron v. Seitz*, 68 F.3d 264, 271 (6th Cir. 1994);

2. the actions were not functions normally performed by a judge; *Id.*

3. the acts did not occur while Plaintiff was dealing with Defendant in her judicial capacity; and

4. except for some of Defendant's courtroom ridicule, none of the adverse acts occurred in Defendant's courtroom or chambers.

### 1.    Defamation

Defamation is not a judicial act. *Barrett v. Harrington*, 130 F.3d 246, 260-261 (6th Cir. 1997). Defendant's defamatory statement during a deposition that she was attempting to preside over was no more privileged than Defendant Harrington's allegedly false statements to the media about Plaintiff Barrett.

### 2.    SCAO Complaint

The SCAO incident is described in Plaintiff's affidavit in Defendant's divorce:

3. That in the deposition of March 9, 2017 affiant was interrupted in giving an answer by the Defendant and accused of lying and being a liar.

4. That the Defendant appeared visibly angry toward affiant.

5. That on March 14, 2017 the undersigned was contacted by the Chief Judge, Hon. David J. Reader and informed that a complaint had been filed by Defendant against affiant with the Supreme Court Administrator's Office alleging that affiant should be admonished for wrongdoing.

6.   That specifically according to Chief Judge Reader, the Defendant accused the affiant of:

    a.   Wrongfully charging 2 hours of sick time while meeting with Plaintiff and his attorney.

    b.   Improperly examining the Defendant's divorce filed on county work time.

*     *     *

13.   That the Defendant heard the testimony affiant gave regarding No. 12 above but made a frivolous complaint trying to discredit affiant to her peers and superiors.

14.   The Chief Judge Reader has indicated based upon the facts she will not receive any admonishment of any nature.

See Ex. B to **Exhibit B**: Zysk Declaration.

It is not in the judicial job description to tattle on Plaintiff to the SCAO for alleged violation of County employment rules.

### 3.   Badmouthing Plaintiff to Third Parties

Repeated badmouthing of Plaintiff on and off the bench was no more privileged than the repeated ridicule of the plaintiff police lieutenant in *Harris v. Harvey*, 605 F.3d 330, 336 (7th Cir. 1979).

### 4.   Interference with Plaintiff's Ability to do Her Job

As stated in the complaint, Defendant purposely crippled Plaintiff's ability to do her job:

60.   On January 17, 2018, Brennan, still bitter at Plaintiff for her protected activity, made a spectacle of herself at a Judge's

7

meeting; when Plaintiff attempted to hand her a disqualification folder, Brennan stated in a disdainful voice "I will not take anything from you, I will never take anything from you, if you need something you can give it to Judge Cavanaugh and she can give it to me."

61.   After Judge Cavanaugh joined the meeting, Brennan, her voice still dripping with venom, reiterated "I will never open an email from Francine, I will never take anything from Francine, I will never have any interaction from Francine, I have told that to SCAO and Judge Cavanaugh."

Defendant was acting in an administrative capacity during this incident and therefore she may assert only qualified immunity. *Schwartz, supra* §9.03[B][6] (**Exhibit C**). This incident was unrelated to a particular adjudication; it related to her disdain for Plaintiff on account of her protected activity. The incident did not occur in Defendant's courtroom or chambers. Finally, Plaintiff was dealing with Defendant not as a litigant, but as an administrator. "**Administrative decisions**, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts." *Forrester v. White*, 484 U.S. 219, 228, 108 S.Ct. 538, L.Ed.2d 555 (1988). (emphasis added)

## 5.   Humiliation of Plaintiff at the Judges Meeting

Judge Brennan verbally attacked Plaintiff at a Judges Meeting when Plaintiff attempted to hand her a folder of disqualification orders. Judge David Reader was so taken aback by the tirade that he wrote the statement down verbatim and later read it back to Judge Cavanaugh when she joined the meeting. Judges Carol Sue

Reader and Suzanne Geddis separately consoled Plaintiff and expressed her sorrow that Defendant would attack her in that fashion. (**Exhibit B**: Zysk Declaration, para. 11)

Defendant was acting in an administrative capacity during this tirade and therefore judicial immunity does not apply. See previous section.

Defendant does not enjoy judicial privilege for impairing Plaintiff's ability to manage a third of the District's Court's docket, falsely reporting to the State Court Administrative Office that Plaintiff engaged in misconduct, loudly proclaiming Plaintiff to be a liar in the presence of third parties and ridiculing Plaintiff out of her presence to third parties in her courtroom.

## IV.   Color of State Law

Defendant asserts that she was not acting under state law when she attempted to stop Plaintiff's deposition and then called her a liar because she was displeased with the testimony. The deposition incident was part of a larger pattern of conduct in which Defendant attempted to use her status as a judge to influence the outcome of her divorce.

According to *Waters v. City of Morristown, TN*, 242 F.3d 353, 359 (2001) "Section 1983 is generally not implicated unless a state actor's conduct … is such that the actor could not have behaved as he did without the authority of his office (citation omitted). The key determinant is whether the actor intends to act in an

official capacity or to exercise official responsibilities pursuant to state law. *See id.*"
For there to be action under color of state law the challenged conduct must relate in
"some meaningful way either to the actor's governmental status or to the
performance of his duties." *Id.*

Because the Livingston County Circuit Court and the 53rd District Court
functions as a unified court, Chief Judge Reader was able to, and did, assign all
divorce cases without minor children to Defendant (even though she was a district
court judge). Mr. Root and Defendant have no children. After Mr. Root sued her for
divorce the case was assigned to Defendant. She failed to recuse herself for five
days, which delayed assignment of a visiting judge and rulings on Root's emergency
motions to preserve all electronic cell phone records, phone records that would
seriously undermine Defendant's claim that she was not having a relationship with
Lt. Furlong during the *Kowalski* murder trial. Complaint, para. 36; **Exhibit D**: Judge
D. Reader Dep. Tr. at 8-9, 11-14, 16-17, 19; **Exhibit E**: Pratt Dep. Tr. at 10-17.

Subsequently, Defendant attended depositions and attempted to preside as if
the testimony was being given in her court. She interrupted Furlong's deposition and
had him change his testimony. See Complaint para. 35. She interrupted Plaintiff's
deposition when she became disenchanted with the subject matter and then called
Plaintiff a liar when she was displeased with her testimony. Complaint, para. 32-34;
**Exhibit A**: Zysk Dep. Tr. at 27-28.

Defendant acted under color of state law by using her judicial position to influence the outcome of her divorce case. She "could not have behaved as [s]he did without the authority of [her] office." Defendant intended "to exercise official responsibilities pursuant to state law" when she held up the disqualification order, interrupted two depositions with the obvious purpose of influencing testimony and then berated Plaintiff when she testified truthfully.

Defendant is like the judge in *Malina v. Gonzalez*, 1993 WL 534163 (E.D. La.) (**Exhibit F**) who was found to be acting under color of state law when he stopped a motorist, flashed his judicial credentials and ordered a police officer to summon the motorist to court after he refused to be arrested and fled the scene. Both Defendant and Judge Gonzalez were throwing their judicial weight around for personal reasons. Neither could have done this without the power afforded by their position. Both were acting under color of state law. Defendant was using her position to intimidate, interrupt and defame Plaintiff at her deposition. She could have only done this because of her position as a judge.

## V.   Adverse Action

### A.   Standard for Adverse Action

An adverse action in the First Amendment Retaliation context is one that would deter a person of ordinary firmness from engaging in protected activity. *Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718, 723 (6th Cir 2010).

The Supreme Court, in *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 75, n. 8; 110 S.Ct. 2729 (1990), a First Amendment political patronage case, rejected the notion that "only those employment decisions that are the 'substantial equivalent of a dismissal' violate a public employee's rights under the First Amendment," noting "Moreover, the First Amendment, as the court below noted, already protects state employees not only from patronage dismissals but also from "even an act of retaliation as trivial as failing to hold a birthday party for a public employee … when intended to punish her for exercising her free speech rights." 868 F.2d, at 954, n. 4." *Id.*

Moreover, the Court is to analyze the adverse actions together, not just individually, to determine whether a person of reasonable firmness would be deterred from protected activity. Thus, the Court in *Coszalter v. City of Salem*, 320 F.3d 968, 976-977 (9th Cir. 2003):

> Looked to several acts by defendant City of Salem and found that "some, perhaps all" of them, "considered individually were adverse actions…. When taken together, it is clear that these acts amounted to a severe and sustained campaign of employer retaliation that was reasonably likely to deter plaintiff from engaging in speech protected under the First Amendment."
>
> The acts included:
>
> the transfer to new duties (# 2); an unwarranted disciplinary investigation (# 4); an unwarranted assignment of blame (# 6); a reprimand containing a false accusation (# 8); a criminal investigation (# 15); repeated and ongoing verbal harassment and humiliation (# 15); the circulation of a petition at the encouragement of management (#

16); a ten-day suspension from work (# 17); a threat of disciplinary action (# 20); an unpleasant work assignment (# 21); a withholding of customary public recognition (# 26); an unwarranted disciplinary action (# 30); and two consecutive ninety-day "special" reviews of work quality (# 29 and # 31).

*Id.* at 976-977.

The Coszalter Court based this holding on *Rutan*, *supra* and cases decided in

its wake:

> Various kinds of employment actions may have an impermissible chilling effect. Depending on the circumstances, even minor acts of retaliation can infringe on an employee's First Amendment rights. *See id.* at 75–76, 110 S.Ct. 2729.

> To constitute an adverse employment action, a government act of retaliation need not be severe and it need not be of a certain kind. Nor does it matter whether an act of retaliation is in the form of the removal of a benefit or the imposition of a burden. In *Allen v. Scribner,* the plaintiff alleged that he had been "reassigned to another position, and otherwise harassed in retaliation for ... remarks he made to the press." 812 F.2d at 428. We found this allegation sufficient to form the basis of a First Amendment claim. In *Thomas v. Carpenter,* 881 F.2d 828, 829 (9th Cir.1989), the plaintiff alleged that he had been banned from attending certain meetings and participating as an evaluator in training exercises in retaliation for his political activity. We found this allegation sufficient. In *Ulrich v. City and County of San Francisco,* 308 F.3d at 977, the plaintiff alleged that his government employer had subjected him to an investigation, refused to rescind his resignation, and filed an adverse employment report in retaliation for his protected speech. Again, we found that his allegation was sufficient to state a § 1983 claim seeking redress for violation of First Amendment rights. In *Anderson v. Central Point School District,* 746 F.2d 505, 506 (9th Cir.1984), the plaintiff alleged that he had been temporarily suspended from his coaching duties and insulted by his employer. We allowed the plaintiff to recover under the First Amendment for emotional distress and damage to his reputation.

> *Id.* at 975.

The Seventh Circuit, in *Bart v. Talford*, 677 F.2d 622, 625 (7th Cir. 1982) similarly held that a court should not analyze the adverse actions in isolation but rather "in gross." The Court held that a "series of petty harassments" "though trivial in detail may have been substantial in gross." *Id.*

The Sixth Circuit adopted the *Bart* standard in *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999). *Ely v. Dearborn Heights School Dt.*, 150 F.3d 842, 853 (E.D. Mich. 2015). Based on the *Bart* standard as applied by the Sixth Circuit, the Court in *Ely* found that a letter of reprimand met the standard for "adverse actions." The *Ely* court also relied for its holding on *Fritz v. Charter Twp., of Comstock*, 592 F.3d 718, 728 (6th Cir. 2010), which held that "a credible threat to the nature and existence of one's ongoing employment is of similar character to the other recognized forms of adverse actions – termination, refusal to hire, etc." *Id. Fritz* held that the defendant's negative statements about plaintiff to her employer were adverse actions. *Fritz* at 728.

Finally, Courts applying the "deterring of a person of ordinary firmness" standard have found adverse actions where the plaintiff was humiliated in front of her male colleagues and otherwise shunned, *Mihalik v. Credit Agricole Cheuvreux North American, Inc.*, 715 F.3d 102, 116 (2d Cir. 2013) (NY state law retaliation claim), and where professional ostracism was carried to an extreme, *Simas v. First*

*Citizens Fed. Credit Union*, 170 F.3d 37, 52, n. 12 (1st Cir. 1999); *Lee v. City of Corpus Christi*, 749 F.Supp.2d 521, 540-541 (S.D. Tex. 2010).

## B.   Application

In this case Plaintiff alleges as adverse actions Defendant's defamation ("you are such a liar"), false complaint with SAO, the state agency charged with overseeing her court, regular ridicule both on and off the bench, harmful interference with her ability to perform her job, and humiliation in the presence of other judges. Whether viewed individually, or "in gross" these are adverse actions.

These acts are different in kind and quantity from the adverse action alleged in *Wurzelbacher v. Jones-Kelly*, 675 F.3d 580, 584 (6th Cir. 2012), where the adverse action was performing searches of confidential databases looking for dirt on the plaintiff. *Id.* at 582. Contrary to this case, there was no threat to Wurzelbacher's livelihood.

Unlike the action in *Wurzelbacher*, Defendant's adverse actions threatened Plaintiff's economic livelihood, humiliated her in the presence of other judges (which will be attested to by said judges) and defamed her in the presence of third parties. Consequently, Plaintiff's allegations sufficiently state an "adverse action."

Further, Defendant's status as a judge compounds the harm occasioned by the adverse actions. That is because Defendant has instant credibility with individuals unfamiliar with her antics. Thus, SCAO personnel, non-attorneys in her courtroom

listening to Defendant ridicule of Plaintiff and third parties that either heard or read Defendant's "liar" statement would tend to believe Defendant's statements simply because of her status as a judge. Finally, it is undeniable that Defendant's power as a judge exacerbated the emotional harm caused to Plaintiff by Defendant's adverse actions. It is one thing to be called a liar by a co-worker, it is quite another to be publicly called a liar by a judge.

## VI.  Defamation

### A.   Judicial-Proceedings Privilege

Defendant attended Plaintiff's two depositions. She was not counsel of record. She attended in her capacity as a party. Plaintiff's testimony did not please Defendant. When Plaintiff testified that she knew that Defendant drank alcohol in her chambers and had information that she was intoxicated in her chambers Defendant interrupted the deposition and exclaimed "you are such a liar" and "you are lying."

Defendant claims that the judicial-proceedings privilege shields her from liability for these statements which are defamatory under well-established law. *See, e.g., Armstrong v. Shirvell*, 596 Fed.Appx. 433 (6th Cir. 2015). The Defendant relies on *Oesterle v. Wallace*, 272 Mich. App. 260, 264 (2006) where it is said "[s]tatements made by **judges**, **attorneys** and **witnesses** during the course of judicial proceedings are absolutely privileged if they are **relevant**, **material** or **pertinent** to

the issues being tried." (emphasis added) However, such a party "may not claim absolute immunity with respect to slanderous and libelous statements otherwise published." *Timmis v. Bennett*, 352 Mich. 355, 364 (1958). Quoting 33 Am. Jur., pp. 172-173, the Supreme Court in *Timmis* notes:

> But the **privilege does not extend to slanderous expressions against counsel, parties, or witnesses**, when the expressions have **no relation to or bearing upon the issue or subject matter before the court**. Nor are statements privileged if they are not uttered in the course of a judicial proceeding. A repetition of privileged words uttered in the course of judicial proceedings, **when no public or private duty** requires an attorney to repeat them, may place him on the same footing as anyone else who utters defamatory statements concerning another. (emphasis added)

*Id.* at 364-365.

Based on the above authority, Defendant may not invoke the judicial-proceedings privilege because:

1. she was not acting in the capacity of an attorney, judge or witness when she interrupted the deposition and angrily made the remarks;
2. no privilege exists to "make slanderous expressions against counsel, parties or witnesses;" and
3. no "public or private duty" required Defendant to make the remarks; in fact, the outburst violated the Michigan Rules of Professional Conduct, and Judicial Canon of Ethics.

Thus, the judicial-proceeding privilege is inapplicable in these circumstances.

The cases cited by Defendant are all inapposite. In *Oesterle* the defendant was an attorney. In *Ghannam v. Hamameh*, 2014 WL 2158174 and *Bedford v Witte*, 318 Mich. App. 60, 65 (2016) the offending statements were made by attorneys in a

complaint filed with the court or on the record. *Bedford* actually supports Plaintiff's position because it affirms that the judicial proceedings privilege does not apply to statements which are "extraneous and unnecessary to those proceedings." *Id.* at 72, which is the case here.

## B.   Publication of Defamation to Third Parties

Contrary to Defendant's assertion, Plaintiff's complaint does indicate who the defamatory statements were made to because it described the context as a deposition. At least two attorneys and a court reporter are present for depositions. Moreover, as set forth in Plaintiff's declaration, a deputy sheriff overheard the statement and Judge Hatty heard about the statement (**Exhibit B**: Zysk Declaration at 5). To the extent the Court finds greater specificity is required, Plaintiff requests leave to amend to specify that Defendant's defamation was published at a minimum to Kathryn L. James, Thomas J. Kizer, Jr., Neil J. Marchand, Donald C. Root, Sheriff Deputy Bishop and Judge Hatty.

## C.   Governmental Immunity

The Governmental Immunity statute, MCLA 691.1407(5), does not shield Defendant because she was not "acting within the scope of her judicial … authority" when she attended a deposition of a third-party witness (Plaintiff) in her divorce case (although she certainly used her status as a judge to alter testimony and intimidate witnesses). Defendant's position as a judge implicated no duty, right or

responsibility to violate the Judicial Canon of Ethics or the Michigan Rules of Professional Conduct by engaging in rude, obstructive behavior at Plaintiff's deposition.

## VII. Conclusion

Plaintiff's complaint adequately states a claim for each of her counts against Defendant. Defendant's motion should be denied.

Respectfully submitted,

*/s/ James K. Fett*
By:  James K. Fett (P39461)
Fett & Fields, P.C.
805 E. Main St.
Pinckney, MI  48169
734-954-0100
jim@fettlaw.com
Dated: April 20, 2018          Attorneys for Plaintiff

Affidavit of Mailing

I hereby certify that on April 20, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: **T. Joseph Seward and Thomas L. Fleury**.

*/s/ James K. Fett*
James K. Fett (P39461)
Fett & Fields, P.C.
805 E. Main St.
Pinckney, MI  48169
734-954-0100
jim@fettlaw.com